GREENLAWN TRAILER SALES CO. ET AL., APPELLANTS, *v.* BD.
OF BUILDING STANDARDS ET AL., APPELLANTS.

[Cite as Greenlawn Trailer Sales v. Board (1976),
51 Ohio App. 2d 161.]

(No. 76AP-32—Decided September 21, 1976.)

*Mr. Dan A. Scarberry,* for appellants.
*Mr. William J. Brown,* attorney general, *Ms. Gladys F.
Burkhart* and *Mr. Rodney B. Teague,* for appellees.

McCORMAC, J. Greenlawn Trailer Sales Company and
Greenlawn Realty Company filed a complaint in the Frank-
lin County Court of Common Pleas against the Board of
Building Standards and its members, alleging that the
board had adopted regulations pertaining to mobile homes
that are unreasonable and unlawful. Greenlawn Trail-
er Sales Company is a licensed motor vehicle deal-
er, selling house trailers, and Greenlawn Realty
Company is a licensed house trailer park operator, rent-
ing house trailer park spaces. The action was brought
pursuant to R. C. 3781.14, as an appeal from the hearing by
the Board of Building Standards, pursuant to R. C. 3781.-
13. No actual controversy was stated, in the complaint, to
exist concerning the application of the regulations adopted
by appellees. Plaintiffs, the appellants herein, requested that
the trial court set aside, vacate and amend the regulations

adopted by the Board of Building Standards and prayed for injunctions against the enforcement of certain sections therein. Defendants, the appellees, filed an answer denying certain pertinent parts of the complaint.

The matter was submitted to the trial court for determination by summary judgment upon stipulations of counsel and briefs of the parties. The court found that the adoption of the disputed sections regulating house trailers was within the authority of the board and granted summary judgment for appellees.

From this judgment, appellants have filed a timely notice of appeal, setting forth the following assignment of error:

"The trial court erred in the holding that the Board of Building Standards of the State of Ohio has the authority to regulate the installation and tie-down of house trailers in a house trailer park licensed by the Department of Health, State of Ohio, pursuant to regulations adopted by the Public Health Council of the State of Ohio."

During oral argument, the court inquired as to the jurisdiction of the Court of Common Pleas to review the rules and regulations adopted by the Board of Building Standards where no actual controversy exists. The parties have submitted supplemental briefs concerning this question. Appellees have taken the position that R. C. 3781.14 is unconstitutional, on the same basis that R. C. 119.11 was held unconstitutional in *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13; and *Rankin-Thoman* v. *Caldwell* (1975), 42 Ohio St. 2d 436. Appellants contend that R. C. 3781.14 differs from R. C. 119.11 and that *Fortner* and *Rankin-Thoman* do not bar appeals under R. C. 3781.14.

In the *Fortner* case, the Ohio Liquor Control Commission amended one of the commission's regulations. A permit holder lodged an appeal under R. C. 119.11, challenging the amended regulation in the Court of Common Pleas, although the permit holder had never been directly subjected to the application of the amended regulation. The Ohio Supreme Court held that R. C. 119.11 cannot be used in a vacuum as a method of challenging the lawfulness of an administrative regulation, thus obtaining a jud-

icial review of a quasi-legislative proceeding. The Supreme. Court further held that courts are confined to deciding whether the rules of boards or commissions are reasonable and lawful as applied to the facts of a particular justiciable case.

In the *Rankin-Thomas* case, the state fire marshal adopted rules and regulations comprising the Ohio Fire Code, and the division of forestry and reclamation adopted rules and regulations pertaining to strip mining and the reclamation of mined land. These actions were challenged, pursuant to R. C. 119.11, on the basis that they were unreasonable and unlawful. In *Rankin-Thoman,* the Supreme Court broadened the *Fortner* holding, declaring R. C. 119.11 unconstitutional, in violation of Section 4(B), Article IV, of the Ohio Constitution, in that its sole purpose is to provide judicial review by the Court of Common Pleas of quasi-legislative proceedings. The court held that only quasi-judicial proceedings of administrative officers and agencies are reviewable by the courts. The court further pointed out that an action for a declaratory judgment may be entertained by a court in the exercise of its sound discretion where a justiciable controversy exists between adverse parties and speedy relief is necessary to the preservation of rights, which may otherwise be impaired or lost.

In this case, the jurisdiction of the trial court was sought under R. C. 3781.14, which provides, as follows:

"Any person in interest mentioned in section 3781.-13 of the Revised Code who is dissatisfied with any action of the board of building standards adopted and confirmed by determination of the board as provided in said section, may commence an action in the court of common pleas of Franklin county against the board as defendant to set aside, vacate, or amend any such provision on the ground that the provision is unreasonable or unlawful and the said court is hereby authorized and vested with exclusive jurisdiction to hear and determine such action. * * *"

That section is contrasted with R. C. 119.11, which, as pertinent, provides as follows:

"**Any person adversely affected by an order of an**

agency in adopting, amending, or rescinding a rule or in adopting, readopting, or continuing a rule, amendment, or rescission previously adopted as an emergency rule as provided in section 119.03 of the Revised Code, may appeal to the court of common pleas of Franklin county on the ground that said agency failed to comply with the law in adopting, amending, rescinding, publishing, or distributing said rule, or that the rule as adopted or amended by the agency is unreasonable or unlawful * * *."

R. C. 3781.14 differs from R. C. 119.11 in that it is broader as to the permitted challenge of standards, as it permits declaratory judgment actions rather than only a judicial review of quasi-legislative proceedings. Hence, R. C. 3781.14 is not unconstitutional and its proper purpose should be given effect, which is to provide a forum for the review of justiciable controversies between adverse parties as to standards of the board.

However, in this case there has merely been the quasi-legislative adoption of rules and regulations which are being challenged by a party who fears that either the sale of trailer houses or the rental of trailer house space *may* be affected by the rules and regulations adopted. Appellants have not actually been subjected to an application of the standards. Thus, as in *Fortner*, the courts have no jurisdiction to decide the case as presented.

As pointed out previously, a declaratory judgment action may be commenced in a proper case to determine the validity of the regulations herein, where a justiciable controversy exists between adverse parties and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost. See *Rankin-Thoman* v. *Caldwell, supra*, at page 441.

In this case, one of the appellants is a dealer selling house trailers, and the other is a house trailer park operator renting house trailer space. The challenged regulations specifically prohibit the sale of house trailers not certified in accordance with the regulations. The regulations also set forth specific requirements with respect to house trailer spaces. Appellants contend that certain of the provisions are unreasonable and unlawful.

Appellants are not required to await the enforcement of the regulations against them. This case meets the test for a declaratory jurdgment, as set forth in *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93. It was within the discretion of the trial court to exercise declaratory judgment jurisdiction over the controversy as, construing appellants' complaint liberally, a justiciable controversy was stated.

Turning then to the merits of the case, the parties stipulated that the sole issue before the trial court was whether the adoption of sections BB-77-11 through 77-11.07 of the Ohio Building Code was within the authority of the Board of Building Standards, and whether these sections are applicable to mobile homes located in house trailer parks licensed by the Public Health Council. It was also stipulated that there was no factual dispute as to this issue.

The sections of the Ohio Building Code to which appellants object are those pertaining to foundations and piers for mobile homes, mobile home stands, mobile home blocking, vertical tie-downs, vertical ground anchors, diagonal ties, tie straps and tie-down requirements for existing units. In other words, the standards which appellants contend appellees unlawfully enacted pertain not to the construction of trailers, but to the foundation, anchoring and tieing thereof.

The trial court ruled, as follows:

"* * * The Public Health Council has not been granted sole and exclusive jurisdiction to enact regulations over mobile home parks; that the adoption of Sections BB-77-11 through BB-77-11.07 of the Ohio Building Code was within the authority of the Board of Building Standards as is provided in Ohio Revised Code Chapter 3780.01 et seq. and that Regulation HE-27-09 (H) adopted by the Public Health Council providing the general requirement that a house trailer 'be provided with paved strips, piers or a pad of such width and length and so positioned as to furnish a stable base for the house trailer' is not in conflict with the more specific provisions of the Building Code regulations BB-77-11 through BB-77-11.01.* * *"

Appellants claim that the contested regulations per-

tain to an area of regulation over which the Public Health Council has exclusive jurisdiction, which is provided by R. C. 3733.02, as follows:

"(A) The public health council, subject to sections 119.01 to 119.13, inclusive, of the Revised Code, may make regulations of general application throughout the state governing the location, layout, construction, drainage, sanitation, safety, and operation of house trailer parks and travel trailer parks."

The authority of the Board of Building Standards is set forth by R. C. 3781.10, which includes the following:

"The board of building standards shall:

"(A) Formulate and adopt regulations governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings specified in section 3781.06 of the Revised Code, including land area incidental thereto, the construction of industrialized units, the installation of equipment, the standards or requirements for materials to be used in connection therewith, and other requirements relating to the safety and sanitation of such buildings. Such rules and regulations shall be the lawful minimum requirements specified for such buildings or industrialized units, except that no rule or regulation which specifies a higher requirement than is imposed by any section of the Revised Code shall be enforceable; such rules and regulations shall be acceptable as complete lawful alternatives to the requirements specified for such buildings or industrialized units in any section of the Revised Code; and the board shall on its own motion, or on application made under sections 3781.12 and 3781.13 of the Revised Code, formulate, propose, adopt, modify, amend, or repeal such rules and regulations to the extent necessary or desirable to effectuate the purposes of sections 3781.06 to 3781.18, inclusive, of the Revised Code * * *."

In addition, R. C. 3781.06 provides:

"Any building which may be used as a place of resort, assembly, education, entertainment, lodging, dwelling, trade, manufacture, repairs, storage, traffic, or occupancy by the public, and all other buildings or parts and

appurtenances thereof erected within this state shall be so constructed, erected, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy, except that sections 3781.06 to 3781.18, inclusive, and section 3791.04 of the Revised Code, shall be considered as model provisions with no force and effect when applied to single-family, two-family, and three-family dwelling houses which have not been constructed or erected as industrialized one-family, two-family, or three-family units or structures within the meaning of the term industrialized unit as provided in section 3781.10 of the Revised Code. Sections 3781.06 to 3781.18, inclusive, and section 3791.04 of the Revised Code, shall not apply to buildings, or structures which are incident to the use for agricultural purposes of the land on which such buildings or structures are located, provided such buildings or structures are not used in the business of retail trade.

"As used in these sections: * * *

"(B) 'A building' is any structure consisting of foundations, walls, columns, girders, beams, floors, and roof, or a combination of any number of these parts, with or without other part or appurtenances.

"A building is considered safe when free from danger or hazard to the life, safety, health, or welfare of persons occupying or frequenting it, or of the public and from danger of settlement, movement, disintegration, or collapse, whether such danger arises from the methods or materials of its construction or from equipment installed therein, for the purpose of lighting, heating, the transmission or utilization of electric current, or from its location or otherwise."

Hence, the Public Health Council is given the authority by state agency to regulate trailer parks which are designed for the installation of buildings thereon, to wit, the trailers. On the other hand, the Board of Building Standards is given authority to regulate the construction, maintenance and installation of the trailers themselves, which include their foundation and the method of securing the trailers to protect the occupants against hazards such

as wind storm damage. The base of a trailer and the method of securing the trailer become part of that building unit, just as the foundation of a conventional house becomes a part thereof when placed on the foundation and secured thereto.

The challenged regulations provide as follows:

"BB-77-11. Foundations and piers.

"Foundations and piers for mobile homes shall be in accordance with the requirements of this section, section BB-77-05 OBC and ANSI A119.1. Design loading stresses shall be substantiated by engineering calculations and presumptive bearing values of soils, withdrawal values of anchors, working and ultimate stress requirements for hardware used in the calculations shall be so stated on the foundation or pier support diagrams.

"The minimum requirements of section BB-77-11 to BB-77-11.07 OBC, inclusive, shall be used for mobile home stands, supports and tiedowns except when conventional foundations or variations from this standard tiedown system are used they shall be in accordance with applicable provisions of Chapters BB-5, BB-29 to BB-39, inclusive and BB-43 OBC, and shall be substantiated by design calculations for the entire system including all tiedown devices of the mobile home and its connections to the foundation or tiedown anchor system for the specific site conditions."

"BB-77-11.01. Mobile home stands.

"Mobile home stands shall be provided with paved runners, strips, piers, pads or other designed bearing surfaces of such width and length and so positioned as to provide a well drained, firm and stable base for the mobile home.

"(A) When concrete slabs or runners are used, they shall be designed to accommodate the imposed loads and soil bearing conditions at any point along the axis of support. Slabs shall be at least 20 inches wider than the center to center dimension of the main longitudinal structural bearing beams. Each runner shall be at least 20 inches wide and centered under the beams. All top soil shall be removed

and the slab or runners shall be placed on firm and stable bearing.

"(B) When pier foundations are used they shall be at least 30 inches below finish grade and rest on firm undisturbed soil. Spacing shall begin at the front wall, spaced in accordance with section BB-77-05 (B) 4. OBC and ANSI A119.1."

"BB-77-11.02. Mobile home blocking.

"(A) Mobile homes shall be properly blocked on mobile home stands. Blocking, jacks or other supports shall be placed level, with full surface bearing, on firm, stable designed bearing surfaces, piers or foundations;

"(B) Blocking shall at least be equivalent in bearing capacity and stability to the foundation upon which it rests. Normal blocking height should not exceed 24 inches and shall not exceed 42 inches from grade to bearing surface of structural bearing beams. Spacing and location of blocking shall be as specified by the manufacturer in accordance with the approved standard. Approved types of weather-resistant shims may be used to make minor adjustments in height for leveling and shall provide full bearing contact with structural bearing surfaces. Supports over 42 inches shall be structurally designed as columns in accordance with section BB-77-11 OBC.

"(C) Blocking shall not be placed on slabs, runners, piers or pads unless they are specifically designed for the imposed loadings on the blocking."

"BB-77-11.03 Vertical tiedowns.

"Vertical tiedowns shall be provided with over the top straps at each tiedown location unless the unit has been designed to maintain the structural continuity of Paragraph 6.5 Part B of ANSI A119.1 and is provided with tiedown hardware as required by section BB-77-95(B) 4, OBC, in which case additional over the top straps are not necessary. Double wide units are not required to have over the roof tiedowns unless specified by the manufacturer."

"BB-77-11.04. Vertical ground anchors.

"Vertical ground anchors shall be designed, located

and spaced as required by this chapter. Vertical ground anchors may be cast in place concrete 'deadmen', eyelets embedded in concrete, helical or screw anchors, arrowhead anchors, or other approved stabilizing devices.

"Soil withdrawal (pull out) values for the type ground anchor used shall be determined at the site and these values must meet or exceed the requirements of this chapter."

"BB-77-11.05. Diagonal ties.

"Diagonal cross-bracing ties between ground anchors and unit frame anchors shall be provided in conjunction with each vertical tiedown. Double wide units are required to be diagonally tied at each support in the same manner as single units and diagonally tied between the center supports."

"BB-77-11.06. Tie straps.

"Vertical and diagonal tie straps shall conform to the stress requirements of this chapter. When steel bands or cables are used for over the top tiedowns, they shall be placed over stud and rafter locations for structural support and shall not rest on corners without approved corner buffer brackets or similar devices to protect roof edge, corners and ties from damage. Bands shall be protected with D-rings or other approved device at connection ends to prevent distortion of band and provided with approved tensioning devices. Cables shall be protected by thimbles at connection ends and provided with approved tensioning devices.

"All tensioning devices, shall be stress and weather-resistant rated in accordance with the requirements of this chapter and no hook-end connections anchors or turnbuckles are permitted for anchoring.

"Tensioning shall not proceed until straps or cables are properly aligned to prevent twist, shearing or cutting of ties or unit. Each tie shall be tensioned in accordance with manufacturers of ties which may damage unit or reduce their capability to hold in heavy or gusting wind conditions."

"BB-77-11.07. Tiedown requirements for existing units.

"All units installed prior to the effective date of this standard are exempt from these tie down requirements providing the date of installation can be confirmed by a true copy of the permit, installation, park owner or operators record or other valid document showing date of installation.

"For the protection of life and property it is strongly recommended that existing units be anchored in accordance with these standards."

Analyzing the contested regulations, we find that they all pertain to the purposes for which the Ohio Building Code has authority; namely, the foundation, support and anchoring of trailers, all of which are within the authority of the Board of Building Standards. We realize that there is one area where both the Public Health Council and the Board of Building Standards have jurisdiction. That area is the construction of the pads upon which trailers are to be placed. It is necessary that the Public Health Council have authority to approve pad construction, as they are part of the trailer park in its initial construction phase, before building units are installed. Thus, the Public Health Council may set forth requirements for pad construction in order for the trailer park to be licensed. On the other hand, the Board of Building Standards is interested in pad construction when it is incorporated as a part of a building unit, at the time the trailer is placed upon and attached to its base. Hence, the Board of Building Standards may adopt regulations pertaining to the pad and its construction in considering the safety of the building unit of which it is a part. The Board of Building Standards does not have the power to license trailer parks or affect the license.

There is no contention at this time that the Public Health Council and the Board of Building Standards have adopted incompatible standards for pad construction. Obviously, the two agencies should work together to avoid conflict or unnecessary burden upon trailer park owners.

This decision does not purport to prohibit further access to the court if an irreconcilable conflict arises in the future because of incompatible standards. Appellants' as-

signment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

Reilly, J., concurs.
Whiteside, J., dissents.

Whiteside, J., dissenting. Although I concur in that portion of the majority decision finding that R. C. 3781.14 in effect provides for an action in declaratory judgment rather than an appeal from the adoption of a rule, I cannot concur in the majority opinion with respect to the merits of the case.

As pointed out by the majority opinion, the Public Health Council is granted the following authority by R. C. 3733.02(A):

"The public health council, subject to sections 119.01 to 119.13, inclusive, of the Revised Code, may make regulations of general application throughout the state governing the location, layout, construction, drainage, sanitation, safety, and operation of *house trailer parks* and travel trailer parks." (Emphasis added.)

However, the majority decision does not refer to the definition of house trailer park set forth in R. C. 3733.01(A), as follows:

" 'House trailer park' means any site, lot, field, or tract of land upon which three or more house trailers used for habitation are parked, either free of charge or for revenue purposes, and includes any roadway, building, structure, vehicle, or enclosure used or intended for use as a part of the facilities of such park. A tract of land which is subdivided and the individual lots are leased or otherwise contracted for shall constitute a house trailer park if three or more house trailers are parked thereon."

Accordingly, the words "house trailer park" as used in R. C. 3733.02(A), "includes any roadway, building, structure, vehicle, or enclosure used or intended for use as a part of the facilities of such park." The Public Health

Council is therefore given authority to make regulations governing the location, layout, construction, and safety of buildings and structures used as a part of the facilities for any tract of land upon which three or more house trailers used for habitation are parked. R. C. 3733.06 provides, as follows:

"Upon a license being issued under sections 3733.03 to 3733.05, inclusive, of the Revised Code, *any park operator shall have the right to rent or use each trailer lot or space for the parking of a house trailer or trailers to be used for human habitation without interruption* * * *." (Emphasis added.)

Although other sections were originally contested, by stipulation in the trial court, the issues herein were limited to the validity of sections BB-77-11 through BB-77-11.07 of the Ohio Building Code. That these regulations pertain to matters within the regulatory authority of the Public Health Council, pursuant to R. C. 3733.02(A), there can be no question. The challenged regulations as set forth in the majority opinion so clearly demonstrate the attempted exercise of overlapping jurisdiction. BB-77-11 commences with the statement that "Foundations and piers for mobile homes shall be in accordance with the requirements of this section, section BB-77-05 OBC and ANSI A119.1." Assuming that the foundation constitutes a building or structure (which it must be for the Board of Building Standards to have jurisdiction), then R. C. 3733.02 confers upon the Public Health Council the authority to make regulations of general application regarding the construction and safety of the foundations and piers.

When approved and licensed as being in accordance with the regulations adopted by the Public Health Council, pursuant to R. C. 3733.06, the operator of a trailer park has the right to rent space for the parking of a house trailer. The attempted imposition of additional requirements upon the operator of a trailer park by the Board of Building Standards which would prevent such operator from exercising the right granted by R. C. 3733.06, unless the operator also obtains some type of approval pursuant to

regulations of the Board of Building Standards and complies with any additional requirements that Board may impose, is obviously in conflict with R. C. 3733.06.

The issue here is not whether trailer park foundations and piers will or should be properly constructed, but rather which agency has the authority to make that determination. R. C. 3733.01, *et seq.*, expressly confer that power upon the Public Health Council. Such power is specific and quite clear with respect to house trailer parks. The fact that the Board of Building Standards may not agree with the regulations adopted by the Public Health Council cannot confer jurisdiction upon such board to adopt more stringent or additional regulations. On the other hand, if the regulations of the Board of Building Standards are identical to those of the Public Health Council, then the imposition of additional regulations is a complete waste of everybody's time and energy and a waste of the taxpayer's money.

The Board of Building Standards has not expressly been granted authority to adopt regulations for trailer parks. It has attempted to "usurp" this power by implication from very broad general powers conferred upon it. The basic authority of the Board of Building Standards is set forth in R. C. 3781.10(A), as being to "formulate and adopt regulations governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings specified in section 3781.06, of the Revised Code * * * the construction of industrialized units * * * and other requirements relating to the safety and sanitation of such buildings."

R. C. 3781.06 specifically excludes from the authority of the Board of Building Standards power to adopt regulations with respect to single-family, two-family, and three-family dwelling houses, except with respect to industrialized units or structures. It is quite clear that to the extent that the house trailers herein involved are "buildings" they are excluded from the authority of the Board of Building Standards to regulate, except to the extent that they constitute industrialized units as defined in R. C. 3781.10.

The authority to regulate industrialized units is separate and apart from the authority to regulate buildings, although both are set forth in R. C. 3781.10. As to buildings, the power is to regulate "the erection, construction, repair, alteration and maintenance." However, as to industrialized units, the power to regulate is limited to "construction." Furthermore, R. C. 3781.10(H) defines industrialized unit as "* * * an assembly of materials or products comprising all or part of a total structure which, when constructed, is self sufficient or substantially self-sufficient, and when installed constitutes the structure or part of a structure, except for preparations for its placement."

By special provision of law, the Public Health Council is given authority to regulate house trailer parks, including the construction of the foundations upon which the house trailer may be placed. Such law specifically provides that when the regulations are met and one is licensed to operate a trailer park, he is entitled to rent spaces to house trailers without further state regulation. On the other hand, the Board of Building Standards is given powdential buildings for three or fewer families, and induser by general provision to regulate buildings, except residtrialized units. The question is which agency has authority to regulate the construction of foundations and piers for mobile homes (the more current term) in a house trailer park—the Public Health Council or the Board of Building Standards. It is quite clear that such power is specifically conferred upon the Public Health Council by R. C. 3733.02 (A), in light of the definition set forth in R. C. 3733.01(A); whereas, the Board of Building Standards is given power to regulate buildings and industrialized units by general provision set forth in R. C. 3781.10. As the Supreme Court held in the first paragraph of the syllabus of *State, ex rel. Myers,* v. *Chiaramonte* (1976), 46 Ohio St. 2d 230, unless there is a manifest legislative intent that a general provision govern, a special provision takes precedence over a general provision. Applying that rule to this case, as it must be, it is quite clear that only the Public Health Council can adopt regulations concerning the foundations and

piers for mobile homes in a house trailer park. According-ly, insofar as BB-77-11 through BB-77-11.07 attempt to regulate house trailer parks as defined in R. C. 3733.01(A), the regulations are beyond the authority of the Board of Building Standards to adopt.

However, this does not necessarily mean that the challenged regulations are entirely without vitality or application. By definition, in R. C. 3733.01(A), in order for an area to be a house trailer park, there must be parked in such place "three or more house trailers used for habitation." As to situations where there are only one or two house trailers used for habitation and parked upon the involved property, the regulations of the Public Health Council have no application. Accordingly, R. C. Chapter 3733, would not preclude the Board of Building Standards from adopting regulations with respect to property upon which only one or two house trailers used for habitation are parked.

There is absoultely no provision in either R. C. Chapter 3733 or Chapter 3781 indicating that house trailer parks are subject to the regulation of the Board of Building Standards as well as the Public Health Council. Which of the agencies should be given the power to adopt regulations for the construction of foundations and piers for house trailers contained in a house trailer park is a matter of legislative wisdom. The legislative intent is quite clear that this power is to be given to the Public Health Council. The Board of Building Standards has no authority to take such power upon itself which has not been conferred upon it by statute, but, instead, has been conferred upon another agency, whether or not the Board of Building Standards agrees with the regulations adopted by such other agency.

Accordingly, I would sustain the assignment of error, reverse the judgment of the Court of Common Pleas and remand this cause to that court for the entering of the appropriate judgment in accordance with this opinion.